308 P.2d 642

**G & G MINING COMPANY, Plaintiff,**

v.

**TAX COMMISSION of the State of Utah, Defendant.**

No. 8595.

Supreme Court of Utah.

March 28, 1957.

Gustin, Richards, Mattsson & Evans, Salt Lake City, for plaintiff.

John Marshall, Ben Rawlings, Salt Lake City, for defendant.

WADE, Justice.

Archie Garwood, R. C. Gerlach and W. E. Bozman, a partnership commonly known as the G & G Mining Company, petitions this court for a review of a decision of the Tax Commission assessing a mine occupation tax on November 4, 1955, for ore sold in 1954.

The facts are that plaintiff on February 11, 1953, leased for a term of two years a portion of the Mi Vida mining claim owned by the Utex Exploration Company. It mined, removed and sold ore from the leased premises from February 11, 1953, until about November 19, 1954, when the Utex Exploration Company, having cancelled the lease, retook possession. The plaintiff had never filed with the Tax Commission a statement of occupation tax of mines during the periods it was operating the claim under its lease. However, after discussions with representatives of the Tax Commission, it filed a statement of occupation tax of mines on July 21, 1955, and paid the sum of $9,697.14 based on ore sold in 1953. Subsequent to this payment the Tax Commission learned that plaintiff had paid no mine occupation tax for ores sold in 1954 and therefore sent it a letter on November 4, 1955, advising that the Commission had learned that the company owed $12,675.40 for the mine occupation tax for 1955 and enclosed therewith a statement of mine occupation tax to be signed and returned by plaintiff. Plaintiff did not sign such statement. At the hearing before the Tax Commission figures were submitted by plaintiff of sales of ore mined in 1954 from which the Commission found that the amount due was $12,628.08.

Plaintiff contends that because it was not mining or producing ore in the state of Utah in 1955, it was not subject to the mine occupation tax in that year because Section 59-5-67, U.C.A.1953, which provides that " * * * every person engaged in the business of mining or producing ore * * * in this state shall pay to the state of Utah an occupation tax * * *", and Section 59-5-73, U.C.A. 1953, which reads "Notice of amount of tax.—Not later than the first Monday in May of each year, the tax commission shall fix the amount of occupation tax that each person shall pay." must be read together. That Section 59-5-67 sets forth the category of persons taxed, and Section 59-5-73 fixes the time when the taxable status is determined, and if at the time the tax is fixed the persons sought to be taxed are not doing business in the state, it follows there is no authority to assess the tax.

There is no merit to this argument. In Consolidated Uranium Mines v. Tax Com-

mission, 4 Utah 2d 236, 291 P.2d 895, 898, this court, on page 240 of the Utah Report, said in relation to the period of time upon which the tax is based:

"  *   *   *  Although, it is true that a license fee or tax may be, and usually is, required to be paid before the business which is licensed may be carried on, the legislature in our Mining Occupation Tax specifically provided that: 'Said tax shall be delinquent on the first day of June next succeeding the calendar year when the ore or metal is *sold.*' (Emphasis ours.) This clearly indicates that the legislature intended that the tax base should be on the 'gross amount received for or the gross value of metalliferous ore sold' and of course that cannot be ascertained until after the occurrence of one of those events. Since the tax is not delinquent until the first day of June next succeeding the calendar year when the ore or metal is sold, this indicates that the tax is on the metal mined in the year prior to the year in which the tax becomes delinquent,  *   *   *."

There being no doubt that plaintiff was engaged in the business of mining or producing ore in Utah in the year 1954, it is liable for the payment of the mine occupation tax for ores sold during that year, even though the payment for such tax is not due until the next succeeding calendar year.

Plaintiff further contends that since the Commission did not fix and give notice of the amount of the tax until November, 1955, it failed to comply with the provisions of Section 59–5–73, U.C.A.1953, and, therefore, the assessment was illegal and a nullity. This contention assumes that the Commission assesses the tax. This is not the fact. The tax is an occupation tax which has been fixed by the legislature and takes the place of an assessment. The tax has been fixed at 1% of the "gross amount received for or the gross value of metalliferous ore sold." The Tax Commission does not use any discretion or judgment in fixing the value of the ore which is the base of the tax, but merely computes the amount of the tax which it shall fix from statements furnished by the taxpayer, or from information from other sources where the taxpayer fails to file a statement, or where it desires to ascertain the correctness of the return filed. See Sections 59–5–68 and 69, U.C.A.1953. With such a tax the taxpayer is as fully cognizant of the amount of the tax for which he is liable before he receives the notice, as he is after. The mine occupation tax prescribes the time when the tax becomes delinquent, and the taxpayer only becomes subject to penalties when he refuses or wilfully fails to make a return within the required time. See Section 59–5–70, U.C.A.1953. In the instant case no penalties were assessed

168

against plaintiff for having failed to make such a return. The failure of the Tax Commission to fix the amount within the time set out in Section 59–5–73 could not in any way injuriously affect the taxpayer. Such a statute is generally considered directory rather than mandatory and intended as a guide to the Tax Commission in the conduct of its business. See 2 Cooley on Taxation, 4th Ed. Sec. 510 and also see 512 on page 1142 wherein the author states:

"Many of the provisions in tax statutes are construed to be merely directory * * * So in general the fixing of an exact time for the doing of an act is only directory where it is not fixed for the purpose of giving the party a hearing, or for any other purpose important to him. When an act is to be done 'forthwith' by an officer in connection with tax proceedings, it will in general be held directory, as used simply to secure system, uniformity, and dispatch in the public business. And statutory regulations that are not designed for the protection of the taxpayer, but for the information of officers to promote method, will be deemed directory and not mandatory * * *."

Although Section 59–5–74, U.C.A.1953, provides for a hearing for the taxpayer if he feels aggrieved at the amount fixed by the Tax Commission, he cannot be affected injuriously by the failure of the Tax Commission to fix the amount and give notice within the time prescribed by the statute, because if notice is not mailed within the time set out in Section 59–5–70, his right to a hearing is not lost. He may get a hearing by applying within ten days after notice is mailed to him. Therefore, the failure to fix the tax and mail the notice within the time fixed did not affect the legality of the tax.

In July, 1955, plaintiff signed a statement and paid a mine occupation tax on ore produced and sold during the entire period of 1953, commencing on February 11, 1953. Under our ruling in the Consolidated Uranium Mines v. Tax Commission, supra, plaintiff was not subject to payment of this tax based on sales prior to October 1, 1953. At the time the payment was made, the decision of this court in that case had not been reported. Since the tax was based on sales for the entire period of plaintiff's activities in that year, and since up until October 1, 1953, such activities were not subject to such taxation, the Tax Commission should allow it a credit on the amount found to be due for taxes based on the 1954 sales. In computing the amount due from plaintiff for its 1953 activities, the "gross amount received for or the gross value of the metalliferous ore sold" during the period subject to taxation in 1953, less the reasonable cost for transporting that ore during that period, should be used as the base in computing the amount of taxes plaintiff should have paid for its 1953 taxes.

The annual exemption of $50,000 should be granted to plaintiff on the amount which could be rightfully used as a base for determining the tax for 1953, i. e., for the period subsequent to October 1, 1953.

Costs to defendant.

McDONOUGH, C. J., and CROCKETT, WORTHEN and HENRIOD, JJ., concur.